United States Court of Appeals
Fifth Circuit

**F I L E D**

November 11, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 01-11287

---

MARK ALAN BURGESS,

      Petitioner-Appellant,

                        versus

DOUG DRETKE, DIRECTOR,
TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL
INSTITUTIONS DIVISION,

      Respondent-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas

---

Before REAVLEY, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Following a jury trial, Petitioner Mark Alan Burgess was convicted of murder and sentenced to life in prison. He filed a petition for a writ of habeas corpus in district court pursuant to 28 U.S.C. § 2254, alleging that the state trial court committed various constitutional violations that tainted his conviction. The district court denied his petition, and we granted him a certificate of appealability on the issue whether the admission of

evidence at trial in violation of his Fifth Amendment rights constituted reversible error. We now AFFIRM.

I

Burgess was convicted for the murder of Amy Cone, his former girlfriend. Cone was last seen alive the morning of November 12, 1996, when she dropped her children off at school. Later that day, Burgess used her cellular phone to call her mother, Lucian Richardson. He told Richardson that he and Cone were taking a business trip, and he asked Richardson to pick up Cone's children and keep them overnight. Cone's parents became suspicious, however, when Burgess called again the next day to tell them that he and Cone would not be home until later that afternoon. Finding it unusual that Cone herself had not called them directly, they filed a missing persons report with the police.

Shortly after his first conversation with Cone's parents on November 12, Burgess called a friend and her husband, Sue and Dale Bakker, and told them that he "had hurt someone really bad" and that he "wanted to turn himself in." When they encouraged him to contact the police, he responded, "you don't understand. I think I've killed somebody. I think she's dead." The following day, Burgess used Cone's cell phone to call his brother and his uncle. He told his brother, Gary Burgess, that "something terrible had happened" and that he "had finally snapped, and had killed somebody ... [w]ith his bare hands." He told his uncle, Harry Weldon, that he had "flipped out" and "had hurt somebody real bad, and that he

2

may have killed somebody." He also spoke with Carla Sharp, a waitress at a local restaurant that he and Cone had frequented. When Sharp asked Burgess about Cone, he replied that she had been decapitated in a car accident.

On November 14, the police found Burgess at a truck stop driving Cone's car, a Chevrolet Suburban. Patrol officers pursued Burgess for over 50 miles, at speeds in excess of 100 miles per hour, until they succeeded in stopping him. When he was finally apprehended, the officers discovered that he had two outstanding warrants for theft, and they read him *Miranda* warnings. When asked about Cone, Burgess initially waived his *Miranda* rights and explained that he had left Cone at a friend's house in Wichita Falls. At some point thereafter, however, he invoked his right to remain silent and requested to speak with a lawyer. The police placed Burgess in custody and searched the Suburban. They found many of Cone's personal items – including her cell phone, wallet, and purse – inside the vehicle.

Burgess was taken to the Eastland County courthouse, where he again invoked his Fifth Amendment rights and requested to speak with Russ Thomason, his attorney. When Thomason arrived, he conferred privately with Burgess and then informed the police that he would not be representing Burgess. The police told Thomason that they urgently needed to locate Cone and requested that he determine whether Burgess would disclose where she was. Thomason

3

agreed and again spoke with Burgess privately. Thomason returned shortly with a piece of paper containing written directions describing the location of Cone's body. The police, who were unfamiliar with the area described in the note, asked Thomason if Burgess would agree to show them the location. Thomason again consulted with Burgess, and Burgess agreed to assist the police discover her body. With Burgess's assistance, police officers searched the area identified in the written directions for many hours until they finally located Cone's body. Testimony at trial indicated that the police would have had little chance of finding Cone's body without Burgess's assistance.

The state indicted Burgess for murder. Before trial, Burgess filed a motion to suppress the evidence gained from the violation of his Fifth and Sixth Amendment rights. He argued that Thomason's visits to him violated his right to counsel because the police initiated contact with him after he requested assistance of counsel. He contended that the evidence obtained as a result of the violation – namely, the written directions – should be suppressed. He also contended that the "fruits" of this evidence should be suppressed, including the evidence relating to the discovery of Cone's body, the forensic report, and any statements Burgess made while assisting the police locate her remains. The district court rejected his claims, finding no constitutional violation. Accordingly, at trial, the state introduced the written directions provided by Burgess, as well as evidence that Cone's

4

body was recovered at that location and forensic evidence indicating that she had been strangled by hand and that she had received several blows to the head that were consistent with blows from fists. The state also introduced a significant amount of other information, including the phone calls Burgess made following Cone's disappearance, the statements he made to various people admitting that he had injured or killed someone, and the fact that he was recovered driving Cone's vehicle.

A jury found Burgess guilty of murder and sentenced him to life in prison. On direct appeal, the Texas Second District Court of Appeals affirmed his conviction. Although the court agreed that there was no Sixth Amendment violation, the court, relying on *Edwards v. Arizona*,[1] concluded that the police had violated his Fifth Amendment right to counsel by initiating contact with him after he requested the assistance of counsel. The court concluded, however, that this violation constituted only harmless error because there was "substantial evidence of [Burgess's] guilt." In conducting its harmless error review, the court focused only on whether the admission of the written directions was harmless; it did not address Burgess's arguments that the "fruits" of that violation should have been excluded as well.

Burgess filed a petition for discretionary review with the Texas Court of Criminal Appeals, which denied review. He also

---

[1] 451 U.S. 477 (1981).

filed a state habeas petition. In both of these filings, he repeated his claims that the admission of both the written directions and its "fruits" constituted reversible error. His state habeas petition was denied without opinion.

In September 2000, Burgess filed a petition in the Northern District of Texas requesting federal habeas relief pursuant to 28 U.S.C. § 2254. The district court rejected his petition, concluding that the evidence admitted in violation of his right to counsel constituted only harmless error. Like the state courts, the federal district court interpreted Burgess's claim as challenging only the admission of the written directions; its error analysis thus did not consider whether the admission of Cone's body, the autopsy report, and statements made by Burgess during the search for her body constituted harmless error. This appeal followed.

II

Burgess filed his habeas petition under 28 U.S.C. § 2254 on September 21, 2000, and our review is therefore governed by the amendments to the federal habeas corpus statutes embodied in the Antiterrorism and Effective Death Penalty Act. Under the AEDPA, when a state prisoner's underlying claims were adjudicated on the merits in state court, a federal court may not grant relief under § 2254 "unless the adjudication of the claim--

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[2]

Section 2254(d)(2) is not at issue in this case; there is no claim that the state trial court's decision was "based on an unreasonable determination of the facts in light of the evidence presented." Our focus, therefore, is on § 2254(d)(1).

Under that provision, a state court's decision is "contrary to" clearly established federal law "when it reaches a legal conclusion in direct opposition to a prior decision of the United States Supreme Court or when it reaches a different conclusion than the United States Supreme Court on a set of materially indistinguishable facts."[3]  Similarly, a state court decision represents an "unreasonable application" of clearly established federal law under § 2254(d)(1) when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."[4]  To determine whether the court applied the rule "unreasonably," "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'

_____

[2] 28 U.S.C. § 2254(d).

[3] *Kutzner v. Johnson*, 242 F.3d 605, 608 (5th Cir. 2001); *see also Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

[4] *Williams*, 529 U.S. at 407-08.

7

The federal habeas court should not transform the inquiry into a subjective one."[5] "'[U]nreasonable' does not mean merely 'incorrect': an application of clearly established Supreme Court precedent must be incorrect *and* unreasonable to warrant federal habeas relief."[6]

To obtain relief under § 2254(d)(2), a state prisoner must demonstrate that the state court determined the facts unreasonably given the evidence presented. The state court's factual determinations are presumed correct, but a petitioner may rebut this presumption with clear and convincing evidence.[7]

Even if we are entitled to grant relief under one of the provisions of § 2254(d), we may not do so if the trial error was harmless. In *Brecht v. Abrahamson*,[8] the Supreme Court "set[] forth a standard for harmless error analysis that was intended to apply to all federal habeas cases involving constitutional 'trial' error."[9] Under this standard, a federal court may grant habeas relief only if it determines that the constitutional error "had

---

[5] *Id.* at 409-10.

[6] *Foster v. Johnson*, 293 F.3d 766, 776 (5th Cir. 2002) (*citing Williams*, 529 U.S. at 410-12).

[7] 28 U.S.C. § 2254(e)(1) (2003).

[8] 507 U.S. 619 (1993).

[9] *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

8

substantial and injurious effect or influence in determining the jury's verdict."[10]

III

On appeal, Burgess argues that the district court erred in conducting its harmless error analysis. His principal claim is that the district court failed to consider the "totality" of the constitutional violation because it limited its harmless error analysis to an examination of whether the admission of the written directions affected Burgess's trial. He argues that the admission of the "fruits" of the Fifth Amendment violation – namely, the evidence of Cone's body, the autopsy report, and statements made by Burgess as he assisted the police locate Cone's body – should also have been suppressed, and that the district court erred by not considering the impact of this evidence on Burgess's trial. Burgess believes that the police officers' willful violation of his right to counsel, coupled with the state's use at trial of all of the illegally obtained evidence and its fruits, was so egregious as to constitute "structural" or "hybrid" error that is not amenable

---

[10] *Brecht*, 507 U.S. at 623.

to harmless error analysis.[11]  He contends that, under *Brecht*, the violations require automatic reversal.

Burgess's argument on appeal rests on the assumption that the state trial court erred in admitting the "fruits" of the constitutional violation.  He focuses on three items of evidence that he claims should have been suppressed: the evidence of Cone's body, the autopsy report, and statements made by Burgess as he helped the police locate her remains.  We will first address the admission of the derivative physical evidence – Cone's body and the forensic report – and then examine the admission of statements made by Burgess to the police during the search for Cone's body to determine if relief is warranted.

A

If Burgess is to prevail on his claim that the trial court erred in admitting Cone's body and the autopsy report, he must

---

[11]  In *Brecht*, the Supreme Court defined three general categories of error.  The Court held that classic trial errors would be reviewed in habeas cases using the harmless error analysis defined by *Kotteakos v. United States*, 328 U.S. 750 (1946). *See Brecht*, 507 U.S. at 638. The Court concluded, however, that "structural" errors – errors that "infect the entire trial process" – are not subject to harmless error analysis and require automatic reversal.  *Id.* at 629.  The Court also identified a third type of error, "hybrid" error:

> [I]n an unusual case, a deliberate and especially egregious error of the trial type, or one that is combined with a pattern of prosecutorial misconduct, might so infect the integrity of the proceeding as to warrant the grant of habeas relief, even if it did not substantially influence the jury's verdict.

*Id.* at 638 n.9.  As with structural errors, hybrid errors may require reversal even if they are harmless.

demonstrate that the district court decision either (1) was "contrary to" or (2) involved an "unreasonable application" of "clearly established" federal law "as determined by the Supreme Court of the United States."[12]  This he cannot do.

Section 2254(d)(1) specifies that relief is unavailable unless there is a violation of "clearly established federal law *as determined by the Supreme Court of the United States.*"[13]  The Supreme Court, however, has never held – much less "clearly established" – that physical evidence derived as a result of a Fifth Amendment violation must be suppressed.  Accordingly, we cannot grant relief.[14]

In fact, fairly read, the Supreme Court's decisions in the Fifth Amendment area most likely establish the opposite rule: that fruits analysis does *not* apply to *Miranda* or *Edwards* violations. The Supreme Court first addressed "fruits" analysis in the Fifth Amendment context in *Michigan v. Tucker.*[15]  In *Tucker*, the Supreme Court held that the testimony of a prosecution witness whose identity was discovered as a result of a statement obtained from

---

[12] 28 U.S.C. § 2254(d)(1).

[13] *Id.* (emphasis added).

[14] As the Third Circuit recently commented, "[o]ur primary concern with the fruit of the poisonous tree argument [in the Fifth Amendment context] is that the Supreme Court has never held that 'fruits' of involuntary statements are inadmissible." *Lam v. Kelchner*, 304 F.3d 256, 268 (3rd Cir. 2002).

[15] 417 U.S. 433 (1974).

the defendant in violation of *Miranda* would not be suppressed.  In so doing, the Court refused to apply "fruits" doctrine for the *Miranda* violation in that case.  The Court extended this approach in *Oregon v. Elstad* by refusing to allow a *Miranda* violation to taint a suspect's subsequent voluntary waiver of his rights.[16]  The Court held that, "[t]hough *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made."[17]  Taken together, *Tucker* and *Elstad* suggest that "fruits" analysis does not apply as fully in the Fifth Amendment context as it does to Fourth Amendment violations.

Burgess does not dispute that the Supreme Court has limited the application of fruits doctrine to Fifth Amendment violations.  He argues instead that the Supreme Court's recent decision in *Dickerson v. United States*[18] undermines these older Supreme Court decisions.  Both *Tucker* and *Elstad*, he notes, were decided at a time when the Supreme Court characterized *Miranda* as a "prophylactic" rule that "swept more broadly than the Fifth Amendment."  In both cases, the Court's rationale reflected the understanding that *Miranda* was not constitutionally compelled and

---

[16] 470 U.S. 298 (1985).

[17] *Id.* at 309.

[18] 530 U.S. 428 (2000).

12

that "technical" *Miranda* violations should not bar the admission of otherwise reliable evidence.[19]  In *Dickerson v. United States*, the Supreme Court changed its approach to *Miranda* and held that *Miranda* is a "constitutional decision" rather than a mere "prophylactic" requirement.  Given that *Miranda* violations are now "constitutional" violations, Burgess argues that *Tucker* and *Elstad* should not control our decision.

We cannot accept Burgess's argument for two reasons.  First, in *Dickerson* itself, the Supreme Court apparently confirmed *Elstad*'s continued vitality:

> Our decision in [*Elstad*] – refusing to apply the traditional "fruits" doctrine developed in Fourth Amendment cases – does not prove that *Miranda* is a nonconstitutional decision, but simply recognizes the fact that unreasonable searches under the Fourth Amendment are different from unwarned interrogation under the Fifth Amendment.

Not only did *Dickerson* not explicitly overrule *Elstad*'s restrictive view of the role of "fruits" analysis to Fifth Amendment violations, but it also explicitly rejected Burgess's argument by stating that *Elstad*'s holding was not inconsistent with the Court's view of *Miranda* as a "constitutional rule."  Burgess's suggestion that *Dickerson* nonetheless overruled *Tucker* and *Elstad sub silentio*

---

[19] As we later wrote of *Tucker*, "neither the Fifth Amendment interest in assuring trustworthy evidence nor the general policy of deterring improper police conduct would be furthered by suppressing the testimony of a witness so identified." *United States v. Cherry*, 794 F.2d 201, 207-08 (5th Cir. 1986) (analyzing *Tucker*).

13

is without merit.  Second, and more importantly, we cannot grant relief under § 2254(d)(1) except for violations of "clearly established" law.  Even if we agreed that *Dickerson* had undermined *Elstad*'s viability, we still could not say that *Dickerson* – or any other Supreme Court decision – clearly established that the fruits of an *Edwards*-style violation are inadmissible.[20]

For the same reason, Burgess's reference to the Tenth Circuit's recent decision in *United States v. Patane*[21] is of no avail.  Under § 2254(d)(1), we may grant relief only for a violation of *"clearly established"* federal law *"as determined by the Supreme Court of the United States."*[22]  A decision by one of our

---

[20] Indeed, we have held that the "derivative evidence doctrine is not triggered by an *Edwards*-style violation." *See United States v. Cannon*, 981 F.2d 785, 789 (5th Cir. 1993).  Under this circuit's law, then, the state trial court committed no constitutional error. We note too that the circuits are split on this issue. *Compare United States v. Patane*, 304 F.3d 1013, 1029 (10th Cir. 2002), *cert. granted*, 123 S.Ct. 1788 (Apr. 21, 2003) (suppressing firearm discovered pursuant to a statement obtained in violation of *Miranda*), with *United States v. Faulkingham*, 295 F.3d 85, 93-94 (1st Cir. 2002) (admitting statements from a witness and drugs discovered as a result of a statement obtained in violation of *Miranda*).  The Supreme Court may soon resolve this issue.  The Court granted certiorari in *Patane*, a case in which the Tenth Circuit used a "fruits" analysis to suppress a firearm discovered after the police questioned a suspect without first reading him his *Miranda* rights.  Until the Supreme Court settles the issue, though, the law will not be clearly established for purposes of § 2254(d)(1).

[21] 304 F.3d 1013 (10th Cir. 2002).

[22] 28 U.S.C. § 2254(d)(1) (emphasis added).

14

sister circuits, even if compelling and well-reasoned, cannot satisfy the requirements under § 2254(d)(1).[23]

As the foregoing discussion demonstrates, it is not "clearly established" that derivative physical evidence obtained after a Fifth Amendment, *Edwards*-style violation must be suppressed. The trial court's admission of Cone's body and the autopsy evidence thus did not contradict or unreasonably apply Supreme Court precedent within the meaning of § 2254(d)(1). Burgess perhaps concedes as much when he states that "[t]he United States Supreme Court has recognized a principle that *by extension* is applicable to the case at bar." It is not enough, under § 2254, that a Supreme Court case apply "by extension" to a purported state court violation; the Supreme Court must speak clearly. For this reason, we do not have grounds under § 2254(d)(1) to grant Burgess relief for the trial court's failure to exclude Cone's body or the forensic report.

---

[23] Burgess cites two Supreme Court cases for support, but neither case is relevant to our issue. He first cites *Rhode Island v. Innis*, 446 U.S. 291, 298 (1980). In *Innis*, the Court attempted to clarify its *Miranda* decision by explaining what constitutes an "interrogation" such that *Miranda*'s protections come into play. *Innis*, however, did not address whether the "fruits" of a *Miranda* (or *Edwards*) violation must be excluded. He also cites *Arizona v. Fulminante*, 499 U.S. 279 (1991), as support for his "fruits" argument. Like *Innis*, though, *Fulminante* said nothing about the admissibility of "fruits" of Fifth Amendment violations. It held only that the defendant's coerced confession – i.e, direct, not derivative evidence – could not be admitted at trial.

15

Burgess also contends that the trial court violated his Fifth Amendment right to counsel by admitting statements made by Burgess during the search for Cone's body. We disagree.

During the search for Cone's body, Burgess allegedly made several highly incriminating statements.[24] Although the state at a pretrial hearing attempted to portray these statements as voluntary, spontaneous, and uncoerced, and thus admissible under *Edwards*,[25] it is possible that these statements constituted an ongoing violation of his Fifth Amendment right to counsel because Burgess had still not been provided counsel at the time of the search.

We need not resolve that issue, however, because these statements were never admitted at trial. The only record citations Burgess provides are to the testimony of one of the policemen at a pretrial suppression hearing. In his brief, Burgess provides us with no evidence indicating that the jury ever heard any of these statements, and our own review of the trial record revealed no such

---

[24] For example, Texas Ranger Russ Authier testified at a pretrial hearing that Burgess said, "I didn't mean to hurt her. You know, I just snapped." Authier also testified that Burgess said, "I didn't mean to kill her. I just snapped."

[25] *Edwards* held that "an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police*." *Edwards*, 451 U.S. at 484-85 (emphasis added).

16

disclosures.  Since the jury never heard any of the statements Burgess allegedly made during the search for Cone's body, we cannot agree that the use of these statements at a pretrial hearing had a "substantial and injurious effect or influence in determining the jury's verdict."[26]  There was, thus, no error whatsoever, harmless or otherwise.

In any event, even if the jury had heard some or all of these statements, there is a wealth of other evidence legitimately in the record that supports the jury verdict.  Burgess repeatedly called people – using *Cone's* cell phone – and told them that he had either "hurt someone real bad" or "killed someone."  In fact, he called Cone's parents - using her cell phone - at the precise time that she was missing.  He admitted to his brother that he had "killed someone with his bare hands," and the forensic report – which, as noted above, was properly admitted – revealed that Cone had been strangled by hand.  Taken together, these pieces of evidence provide overwhelming evidence of his guilt.[27]

---

[26] *See Brecht*, 507 U.S. at 637.

[27] There is, of course, a wealth of other evidence in the record.  Burgess was apprehended after a lengthy, high-speed car chase, driving Cone's Suburban.  The car contained many of her personal belongings, including her purse.  In addition, Burgess told Carla Sharp that Cone had been decapitated, even though he later told police that he had dropped her at a friend's house.

17

IV

Perhaps recognizing that the trial court did not violate "clearly established" law, Burgess attempts to recast the violation as "structural" or "hybrid" error. Citing *Brecht*, he claims that structural and hybrid errors are not subject to harmless error analysis but instead require automatic reversal. Burgess's argument is misguided.

First, as noted above, under § 2254(d)(1), we have authority to grant habeas relief *only* when there is a violation of "clearly established" law. Without such a predicate violation, the statute forbids us from granting relief. Given that the state court did not err – either under our own precedent or under "clearly established" Supreme Court precedent – by admitting the physical fruits of the *Edwards* violation, we do not have the authority under § 2254(d) to grant relief.

For this reason, Burgess's reliance on *Brecht v. Abrahamson*[28] is misplaced. In *Brecht*, the Supreme Court explained that a federal court in habeas must generally review a state court's decision using a strict "harmless error" standard, but that cases involving "structural" or "hybrid" error require reversal regardless of harm. In making these observations, however, the Court did not purport to enlarge the power of federal courts to

---

[28] *Brecht*, 507 U.S. 619 (1993).

18

grant relief under § 2254(d)(1).[29]  *Brecht* does *not* hold that structural or hybrid error requires reversal even when the trial court has not committed a violation of clearly established federal law.  It held only that, if "structural" or "hybrid" error occurs, harmless error review is inappropriate.  Under the AEDPA, we simply cannot grant relief unless we find a violation of "clearly established" federal law, even if the error complained of is "structural."

In any case, Burgess has not demonstrated that the purported violations in this case constituted either "structural" or "hybrid" error.  "Structural error" is error that "infect[s] the entire trial process," such as a biased trial judge or the denial of counsel to the defendant.[30]  "Hybrid" error is defined as either an "especially egregious" trial error or a trial error "combined with a pattern of prosecutorial misconduct that might so infect the integrity of the proceeding" as to warrant habeas relief.  These types of errors arise in "very limited circumstances."[31]  The

---

[29] Indeed, given that *Brecht* predates the passage of the AEDPA, the Court in *Brecht* could not have spoken to this issue.

[30] *Brecht*, 507 U.S. at 629-30.  Although *Brecht* cited "denial of counsel" as an example of a structural error, its cite to *Gideon v. Wainwright*, 372 U.S. 335 (1963), makes it clear that the Court was not referring to the *Edwards*-style violation at issue in this case.  Rather, it was referring to the absolute denial of the Sixth Amendment right to have assistance of counsel at trial.

[31] *See, e.g., Duckett v. Mullin*, 306 F.3d 982, 994-95 (10th Cir. 2002).

19

violation in this case did not constitute either structural or hybrid error. Given that the state court did not err by admitting the derivative physical evidence and that the statements made by Burgess during the search were never revealed to the jury, the only evidence admitted as a result of the Fifth Amendment violation was the written directions. The admission of these directions was error, but we do not agree that it "infect[ed] the entire trial process." Indeed, we have explicitly held that Fifth Amendment violations arising from custodial interrogation are subject to harmless error analysis under *Brecht*.[32] Given this holding, Burgess's argument must fail.

We also agree with the district court that the admission of the written directions was harmless error under *Brecht*. As noted above, there was a wealth of evidence validly in the record that provided overwhelming evidence of Burgess's guilt, including: his statements to friends and family that he had injured or killed someone; his statement to his brother that he had killed a woman with his bare hands; the forensic report revealing that Cone was strangled by hand; the phone calls that he made using Cone's cell phone; and the fact that he was driving Cone's car, which contained her purse and other personal belongings, when he was captured. Given this evidence, the admission of the written directions did

---

[32] *See Hopkins v. Cockrell*, 325 F.3d 579 (2003) (holding that admission of a prisoner's involuntary confession obtained in violation of *Miranda* was "harmless error").

20

not have a "substantial and injurious effect or influence in determining the jury's verdict."[33]

                                    V

We do not have grounds for granting relied under § 2254(d) unless we first find that the state court made an error of "clearly established" law that is not harmless.  We find no such violation here.  The judgement of the district court is AFFIRMED.  The State's motion to strike Burgess's Supplemental Letter Brief is DENIED.

---

[33] *Brecht*, 507 U.S. at 623.