United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 17, 2006**

Charles R. Fulbruge III
Clerk

REVISED MARCH 29, 2006

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-10646

_____

TED CALVIN COLE,
now known as Jalil Abdul-Kabir,

                              Petitioner-Appellant,

versus

DOUG DRETKE, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE,
CORRECTIONAL INSTITUTIONS DIVISION,

                              Respondent-Appellee.

--------------------
Appeal from the United States District Court
for the Northern District of Texas

--------------------
ON PETITION FOR REHEARING EN BANC

(Opinion 5/19/04, 5th Cir., 99 Fed. Appx. 523)
(Opinion on Remand from U.S. Supreme Court 7/22/05, 418 F.3d 494)

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:

     Treating the Petition for Rehearing En Banc as a Petition for
Panel Rehearing, the Petition for Panel Rehearing is DENIED.  The
court having been polled at the request of one of the members of
the court and a majority of the judges who are in regular active
service and who are not disqualified not having voted in favor

(FED. R. APP. P. and 5TH CIR. R. 35), the Petition for Rehearing En Banc is DENIED.

DENNIS, Circuit Judge, dissenting from denial of the motion for rehearing en banc.

I respectfully dissent from the majority's refusal to grant rehearing en banc. The Supreme Court remanded this case to the panel for reconsideration in the light of Tennard v. Dretke, 542 U.S. 274 (2004), which determined that the Fifth Circuit's "constitutional relevance rule," which included the "nexus" and "uniquely severe" tests, had no basis in the Supreme Court's decisions and suggested that those rules were, in fact, in conflict with federal law clearly established by the Supreme Court's decisions in Penry v. Lynaugh, 492 U.S. 302 (1989)(Penry I), Boyde v. California, 494 U.S. 370 (1990), and McKoy v. North Carolina, 494 U.S. 433 (1990).

The panel, after reconsidering this case in light of Tennard and Smith v. Texas,[1] 543 U.S. 37 (2004), applied the clearly established federal relevance standard recognized in McKoy to determine that Cole's organic neurological defect, lack of impulse control and destructive family background were relevant mitigating evidence, but incorrectly interpreted and applied the Supreme Court's decisions in Johnson v. Texas, 509 U.S. 350 (1993) and Graham v. Collins, 506 U.S. 461 (1993) as holding that the clearly established federal capital sentencing principles (requiring a

---

[1] Decided by the Supreme Court subsequent to its remand of Cole.

3

State to empower and allow its capital sentencer to fully consider a defendant's relevant mitigating evidence in individualized assessment of his culpability and to give that evidence full effect in selecting his sentence) articulated in Penry I apply only to mitigation evidence, such as mental retardation, that has, for the defendant's case, a "double-edged" harmful (i.e., only an aggravating, and no mitigating) effect upon the jury's answer to whether the defendant will be a danger to society in the future. Then, without bothering to determine whether the pertinent state court's decision was contrary to or an unreasonable application of clearly established federal law under AEDPA, the panel examined Cole's mitigation evidence in detail, determined that none of it had a double-edged effect, and thus concluded that there had been no constitutional violation under Penry I.

In doing so, I believe that the panel used another Fifth Circuit gloss upon a Supreme Court decision, i.e., the double edged evidence limitation of Penry I, that has no basis in the Supreme Court decisions, to avoid confronting the real issue, viz., whether the Texas special issue instruction prevented the sentencing jury from being able to fully consider and give full effect to Cole's relevant mitigating evidence. When that issue is addressed by applying the federal law clearly established by the Supreme Court's decisions, shorn of unauthorized Fifth Circuit gloss, as required by AEDPA, I believe that we will be forced to conclude that the

4

decision by the state court on November 24, 1999 to deny Cole habeas relief was either contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court's decisions. I cannot be absolutely certain of this result, because neither the panel nor I have yet examined that state court decision and its underpinnings. On its face, however, the panel decision appears to be incorrect and the situation we are in clearly calls for an en banc reconsideration of this case.

The majority's decision to deny en banc reconsideration of the panel decision is extremely unfortunate. The panel's decision erroneously denigrates the pertinent clearly established Supreme Court jurisprudence of Penry I, McKoy and Boyde specifically highlighted in Tennard and Smith and perpetuates the misinterpretation of Johnson v. Texas and Graham v. Collins as our circuit precedent. Our other panels, as well as the federal district and state courts, are certain to follow the Cole panel once more into a breach that leads to almost certain Supreme Court reversals and remands. The resulting waste of judicial resources will be exacerbated this time, however, by our indifference in allowing the Cole panel's false signals to misdirect the adjudication and review of many other state and federal Texas death penalty cases. The responsible, efficient and just course in the present circumstances would have been, instead, for us to resolve promptly en banc the important issues raised by the Cole panel

5

decision and allow time for possible correction by the Supreme Court before permitting our numerous other death penalty panels to generate more decisions without either en banc or renewed Supreme Court guidance.

The reasons that an en banc rehearing is urgently needed in this case are substantially similar to the reasons I assigned in concurring in the judgment only in Nelson v. Dretke – F.3d —, No. 02-11096, 2006 WL 477143 at *5 (5th Cir. 2006). In that opinion, I concluded that the clearly established federal law under AEDPA on October 10, 2001, the date of the Texas Court of Criminal Appeals' denial of state habeas relief to Nelson on the merits, essentially required a state to (1) empower its capital sentencer to (a) give full consideration and effect to all of the defendant's relevant mitigating evidence; (b) make an individualized assessment of the level, degree, magnitude, and nature of the defendant's moral culpability and deathworthiness; and (c) select the appropriate sentence of either life imprisonment or death for each convicted defendant based on that assessment in light of all of the relevant evidence in the case; and (2) refrain from interfering with the capital sentencer's performance of this constitutionally protected function. In essence, I believe that these federal constitutional requirements imposed on a State by the Eighth and Fourteenth Amendments were clearly established by the Supreme Court's decisions prior to Penry I; that any doubt as to these requirements

6

was removed by the Court's clear reaffirmation and reestablishment of them in Penry I itself; that any new doubt or question as to these requirements raised by any of the Court's decisions after Penry I, such as Johnson and Graham, were dispelled by the Court's decisions in McKoy, McCleskey v. Kemp, 481 U.S. 279 (1987), Boyde, Buchanan v. Angelone, 522 U.S. 269 (1998), and Payne v. Tennessee, 501 U.S. 808 (1991), prior to the Texas Court of Criminal Appeals' denial of state habeas relief on the merits to Cole on November 24, 1999.

In Furman v. Georgia, 408 U.S. 238 (1972), Justice Stewart expressed what has come to be the longstanding view of the Supreme Court that:

> The penalty of death differs from all other forms of criminal punishment, not in degree but in kind. It is unique in its total irrevocability. It is unique in its rejection of rehabilitation of the convict as a basic purpose of criminal justice. And it is unique, finally, in its absolute renunciation of all that is embodied in our concept of humanity.

Id. at 305 (Stewart, J. concurring). Thus, he concluded, "that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." Id.

The natural outgrowth of that view led to the Court's cases condemning mandatory imposition of the death penalty, Roberts v. Louisiana, 431 U.S. 633 (1977) (per curiam); Woodson v. North Carolina, 428 U.S. 280 (1976) (plurality opinion); recognizing that

7

arbitrary imposition of that penalty violates the Eighth Amendment, e.g., <u>Zant v. Stephens</u>, 462 U.S. 862, 874 (1983); <u>Gregg v. Georgia</u>, 428 U.S. 153, 189 (1976); <u>Furman</u>, supra; mandating procedures that guarantee full consideration of mitigating evidence, e.g., <u>Eddings v. Oklahoma</u>, 455 U.S. 104 (1982); <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978) (plurality opinion); and requiring that capital sentencers be empowered and allowed to select for the death penalty only the most blameworthy or deserving of offenders for that punishment through individualized culpability assessments and sentence selections based on the sentencer's giving full consideration and full effect to all of the defendant's relevant mitigating evidence. See <u>California v. Brown</u>, 479 U.S. 538, 545-546 (1987)(O'Connor, J., concurring)("<u>Lockett</u> and <u>Eddings</u> reflect the belief that punishment should be directly related to the personal culpability of the criminal defendant. Thus, the sentence imposed at the penalty stage should reflect a reasoned moral response to the defendant's background, character, and crime rather than mere sympathy or emotion....[T]he individualized assessment of the appropriateness of the death penalty is a moral inquiry into the culpability of the defendant[.]") See also <u>Hitchcock v. Dugger</u>, 481 U.S. 393 (1987); <u>Sumner v. Shuman</u>, 483 U.S. 66 (1987); <u>Franklin v. Lynaugh</u>, 487 U.S. 164, 184 (1988)(O'Connor, J., with Blackmun, J., concurring)(stating that the "principle underlying <u>Lockett</u>, <u>Eddings</u>, and <u>Hitchcock</u>, is that punishment should be directly

8

related to the personal culpability of the criminal defendant."); *Id*. at 191-192 (Stevens, J., with two other Justices, dissenting)(agreeing with O'Connor that "the jury must "not merely...be allowed to hear any such [mitigating] evidence the defendant desires to introduce...[but also] allowed to give 'independent mitigating weight' to the evidence.").

In the parallel, sometimes overlapping, development of exemptions from eligibility for the death penalty, the Supreme Court has held that the principles underlying capital punishment sentencing require that whole categories of crimes and offenders be removed from exposure to the death penalty because they presented an insufficient level of moral culpability to warrant the most extreme form of punishment. Prior to <u>Penry I</u>, the Court thus exempted murderers whose crimes reflect only minimal or ordinary moral depravity, <u>Godfrey v. Georgia</u>, 446 U.S. 420, 433, (1980)(plurality opinion); rapists of adult women, <u>Coker v. Georgia</u>, 433 U.S. 584 (1977); murderer-accomplices who lack a sufficiently culpable state of mind, <u>Enmund v. Florida</u>, 458 U.S. 782 (1982); and murderers who were under the age of 16 at the time of the crime, <u>Thompson v. Oklahoma</u>, 487 U.S. 815, 838 (1988) (plurality opinion). Subsequent to <u>Penry I</u> & <u>II</u>, the court applied the same principles to exempt mentally retarded persons and offenders who were under the age of 18 at the time of the crime. <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002); <u>Roper v. Simmons</u>, 543 U.S.

551 (2005). Even dissenters who disagreed with categorical exemptions often expressed support for the constitutional requirement that the capital sentencer be empowered and allowed to make particularized selection of only those for the death penalty who were sufficiently culpable based on an individualized assessment of the mitigating evidence and the circumstances of each case.[2] This signifies a deep and abiding establishment of the principle of individualized capital sentencing on the basis of each offender's degree of culpability and full consideration of mitigation evidence.

The Supreme Court in Penry I in 1989 reaffirmed the foregoing clearly established principles that a capital sentencer must be empowered to individually assess the culpability and just desert of each defendant and individually determine the appropriate sentence

---

[2] See Atkins, 536 U.S. at 318, 122 S.Ct. 2242; see also id. at 349-351, 122 S.Ct. 2242 (stating that "only the sentencer can assess whether his retardation reduces his culpability enough to exempt him from the death penalty")(Scalia, J., Rehnquist, J., and Thomas, J., dissenting); Roper, 125 S.Ct. at 1224 (stating that "[i]n capital cases, this Court requires the sentencer to make an individualized determination, which includes weighing aggravating factors and mitigating factors") (Scalia, J., dissenting); Thompson, 487 U.S. at 870, 108 S.Ct. 2687 (recognizing a constitutional trend towards "individualized sentencing determinations rather than automatic death sentences for certain crimes") (Scalia, J., Rehnquist, J., and White, J., dissenting); and Eddings v. Oklahoma, 455 U.S. 104, 121 (1982) (interpreting Lockett as requiring an individualized consideration of mitigating circumstances) (Burger, J., White, J., Blackmun, J., and Rehnquist, J., dissenting).

for him based on all the relevant mitigating evidence. The <u>Penry I</u> Court held that:

(1) at the time Penry's conviction became final, it was clear from <u>Lockett</u> and <u>Eddings</u> that a State could not, consistent with the Eighth and Fourteenth Amendments, prevent the sentencer from considering and giving effect to evidence relevant to the defendant's background or character or to the circumstances of the offense that mitigate against imposing the death penalty. <u>Penry I</u>, 492 U.S. at 318;

(2) [t]he rule Penry [sought]--that when such mitigating evidence [of his mental retardation and abused childhood] is presented, Texas juries must ... be given jury instructions that make it possible for them to give effect to that mitigating evidence in determining whether the death penalty should be imposed--is not a 'new rule' under <u>Teague</u> because it is dictated by <u>Eddings</u> and <u>Lockett</u>. <u>Id</u>. at 318-19;

(3) "[u]nderlying <u>Lockett</u> and <u>Eddings</u> is the principle that punishment should be directly related to the personal culpability of the criminal defendant," <u>Id</u>. at 319;

11

(4) "[I]t is not enough simply to allow the defendant to present mitigating evidence to the sentencer. The sentencer must also be able to consider and give effect to that evidence in imposing sentence." Id.;

(5) "In order to ensure reliability in the determination that death is the appropriate punishment in a specific case, the jury must be able to consider and give effect to any mitigating evidence relevant to a defendant's background and character or the circumstances of the crime." Id. at 328; and

(6) therefore, "in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused [childhood] background by declining to impose the death penalty, ... the jury was not provided with a vehicle for expressing its reasoned moral response to that evidence in rendering its sentencing decision." Id. at 328 (internal quotations and citations omitted).

Between the time of the Penry I decision in 1989 and the pertinent state court habeas denial of habeas relief to Cole on November 24, 1999, the Supreme Court reaffirmed or clearly established the meaning of relevant mitigating evidence in capital

12

punishment sentencing proceedings, the requirement that the capital sentencer be empowered and allowed to make individualized culpability assessments and selections of sentences without interference, the requirement that there be no limitation on the sentencer's consideration of any relevant mitigating circumstance, the requirement that the sentencer not be constrained in the manner in which it gives effect to relevant mitigating evidence, and adopted and applied the Boyde reasonable likelihood rule for determining when limitation on the sentencer's ability and freedom to fully consider and fully give effect to relevant mitigating evidence violated the Eighth Amendment.

In McKoy v. North Carolina, 494 U.S. 433 (1990) the Court reaffirmed or clearly established that the principle of relevance under Federal Rule of Evidence 401 applies in capital cases and cannot be distorted by the state so as to interfere with the sentencer's full consideration and use of relevant evidence in culpability assessment and sentence selection. "It is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove the ultimate fact in issue, but only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' FED. R. EV. 401." McKoy, 494 U.S. at 440 (quoting T.L.O., 469 U.S. at 345 (1985)).

13

In <u>Payne v. Tennessee</u>, 501 U.S. 808 (1991), Chief Justice Rehnquist, writing for a six-Justice majority, reaffirmed that "States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot challenge the sentencer's discretion, but must allow it to consider any relevant information offered by the defendant." (quoting <u>McCleskey v. Kemp</u>, 481 U.S. 279 (1987).

The Court in <u>Buchanan v. Angelone</u>, 522 U.S. 269, 276-77 (1998), reaffirmed that a state must empower and allow its capital sentencer to select either the death penalty or life imprisonment according to an individualized assessment of culpability level based on all of the defendant's relevant mitigating evidence. <u>Buchanan</u> declared that "[i]n the selection phase, [Supreme Court] cases have established that the sentencer may not be precluded from considering, and may not refuse to consider, any constitutionally relevant mitigating evidence." <u>Id</u>. at 276. It also reaffirmed that states do not have an unhindered ability to create sentencing schemes as they see fit, and that to be constitutional they must not "preclude the jury from giving effect to any relevant mitigating evidence." <u>Id</u>. Finally, the Court distinguished <u>Penry I</u> from the facts of <u>Buchanan</u>, making clear that <u>Penry I</u> involved a Texas special issues scheme where the instructions "constrain[ed]

14

the manner in which the jury was able to give effect to mitigation." 522 U.S. at 277.

In Boyde v. California, 494 U.S. 370 (1990) the Court held that (1) the Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence offered by petitioner (citing Lockett v. Ohio, 438 U.S. 586 (1978); Eddings v. Oklahoma, 455 U.S. 104 (1982); and Penry, supra) and (2) where the claim is that a challenged capital sentencing jury instruction is ambiguous and therefore subject to erroneous interpretation, the proper inquiry is whether there is a reasonable likelihood that the jury has applied the instruction in a way that prevents the consideration of relevant mitigating evidence. Although a defendant need not establish that the jury was more likely than not to have been impermissibly inhibited by the instruction, a capital sentencing proceeding does not violate the Eighth Amendment if there is only a possibility of such an inhibition. Id.

A few years later, the Court in Johnson v. Texas, 509 U.S. 350 (1993), held that where the question is raised whether the Texas special issues instruction allowed adequate consideration of the mitigating evidence of petitioner's youth, "the standard against which we assess whether jury instructions satisfy the rule of Lockett and Eddings was set forth in Boyde v. California, 494 U.S. 370 (1990). The Court there held that a reviewing court must

15

determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id. at 380. Although the reasonable likelihood standard does not require that the defendant prove that it was more likely than not that the jury was prevented from giving effect to the evidence, the standard requires more than a mere possibility of such a bar.

Thus, the Court in Johnson acknowledged that the special issues instruction had caused a possible constitutional violation and adopted the Boyde reasonable likelihood test for the purpose of determining whether a violation had indeed occurred. Further, the Court in Johnson applied the Boyde test and concluded that there was not a reasonable likelihood that the instruction had prevented a full consideration of the relevant mitigating evidence of Johnson's youth for the purpose of assessing his culpability. To support its conclusion the Court's majority opinion undertook an extensive analysis of the evidence in that particular case and demonstrated to its own satisfaction that the jury's mental process in considering the evidence for the purpose of answering the future dangerousness special issue was substantially the same as that of a jury which had considered the evidence for the purpose of

16

assessing the defendant's culpability and selecting the appropriate sentence.[3]

In essence, the Court's majority indicated that the jury's consideration of the mitigating evidence in answering the special issue mimicked or served as a proxy for a consideration of the evidence for the purposes of assessing the defendant's culpability and selection of the appropriate sentence for him and his crime. For some jurists, this is a troublesome analysis or rationale, as

---

[3] Thus, the Court stated that answering the future dangerousness special issue "is not independent of an assessment of personal culpability", involving "the extent to which youth influenced the defendant's conduct." Johnson, 509 U.S. at 369. "If any jurors believed that the transient qualities of petitioner's youth made him less culpable for the murder, there is no reasonable likelihood that those jurors would have deemed themselves foreclosed from considering that in evaluating petitioner's future dangerousness." Id. at 370. Consideration of the relevant qualities of petitioner's youth still "allow[s] the jury to give effect to [this] mitigating evidence in making the sentencing decision." Id. (internal citations omitted).

The jurors were required to "exercise a range of judgment and discretion." Id.(citing Adams v. Texas, 448 U.S. 38, 46 (1980)). "[A] Texas capital jury deliberating over the Special Issues is aware of the consequences of its answers, and is likely to weigh mitigating evidence as it formulates these answers in a manner similar to that employed by capital juries in 'pure balancing' States." Id. at 370- 71 (citing, Franklin v. Lynaugh, 487 U.S. 164, 182 n.12 (1988) (plurality opinion)). "[T]he questions compel the jury to make a moral judgment about the severity of the crime and the defendant's culpability. The Texas statute directs the imposition of the death penalty only after the jury has decided that the defendant's actions were sufficiently egregious to warrant death." Id. at 371 (internal citations omitted). "[C]onsideration of the second special issue is a comprehensive inquiry that is more than a question of historical fact." Id.

evidenced by the strong dissent by four of the Justices.[4] Therefore, it is important to note that whether the special issue adequately mimicked a comparative culpability analysis in <u>Johnson</u> is largely a factual inquiry based on the character and propensities of the defendant and the circumstances of the crime in that particular case. The holding or legal rule of decision in <u>Johnson</u>, which is controlling and applicable to the present case for purposes of AEDPA, was simply that when the special issues instruction raises the question of whether the jury was precluded from fully considering and giving effect to the defendant's relevant mitigating evidence, the issue must be determined by applying the <u>Boyde</u> reasonable likelihood test. The Court's subsequent straightforward application of the <u>Boyde</u> test in <u>Penry v. Johnson</u>, 532 U.S.782 (2001) (<u>Penry II</u>), without reference to <u>Johnson</u> or its extensive analysis of its facts corroborates this conclusion.

Under AEDPA, the <u>Cole</u> panel was required to determine whether the state court's denial of state habeas relief to Cole on the merits on November 24, 1999 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. In sum, the Supreme Court has said that § 2254(d)(1)

---

[4]See <u>Johnson v. Texas</u>, 509 U.S. 350, 375 (1993) (O'Connor, J., Blackmun, J., Stevens, J., and Souter, J., dissenting).

18

places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

The panel opinion, however, does not describe, analyze or review the pertinent state court's opinion or reasons for its decision in this case. Consequently, it is difficult to see how the panel was able to determine with any confidence that the pertinent state court decision was or was not contrary to or an unreasonable application of clearly established federal law as

19

determined by the Supreme Court's decisions.  This in itself is reason enough for an en banc reconsideration of the panel's decision.

The more important reason that en banc reconsideration is needed, however, is that the Cole panel opinion on its face appears to result in a decision that is contrary to clearly established federal law as determined by the Supreme Court's decisions. For the reasons explained above and in my separate opinion in Nelson v. Dretke, the  Supreme Court decisions dating from Penry I to the present time reaffirm and clearly establish the generally applicable Eighth and Fourteenth Amendment requirements that a State must empower and allow its capital sentencer to fully consider and fully give effect to a defendant's relevant mitigating evidence. Cole's moral culpability was a factor of consequence to the outcome of the sentencing proceeding. Cole's evidence of his organic neurological defect, lack of impulse control, and destructive family background was relevant mitigating evidence, as the Cole panel concedes, because it made it more likely that the jury would assess Cole with a lower level of culpability than it would have without that evidence. The panel does not dispute, but tacitly admits, that the State failed to comply with its duty and responsibility to empower and allow the sentencing jury to fully consider and fully give effect to Cole's relevant mitigating evidence by assessing his culpability and selecting his sentence on

20

the basis of that evidence and assessment. Consequently, it is plain that there is a significant possibility that the State violated Cole's Eighth Amendment rights by lack of compliance with the capital sentencing requirements. Accordingly, either the panel or this en banc court is required to apply the Boyde test to determine whether a violation indeed exists, and, if so, apply the Brecht harmless error test before granting habeas relief.

The panel opinion erroneously concludes that Penry I and Penry II have no application here because the Supreme Court limited the scope of those decisions in Johnson, when it observed that there was expert medial testimony that the defendant was mentally retarded and that his condition prevented him from learning from his mistakes, so that the only logical manner in which Penry's jury could have considered the evidence of his mental retardation the future dangerousness special issue was as an aggravating factor. Further, the panel took the position that the Supreme Court also limited Penry I when it indicated in Graham v. Collins, 506 U.S. 461 (1993) that "family background" evidence falls within the broad scope of Texas's special issues.

Graham does not establish any precedent or holding that adds to or detracts from the federal law clearly established by the Supreme Court's cases for purposes of AEDPA. Graham presented a collateral attack on a death sentence by a petitioner whose conviction became final before Penry I was decided, and thus the

threshold issue, the only one decided, was whether under <u>Teague v. Lane</u>, 489 U.S. 288 (1989), granting Graham the relief he sought would create a new rule of constitutional law. Because the answer was "yes," instead of reaching the merits of Graham's claims, the Court considered only the preliminary question of whether reasonable jurists would have felt compelled by existing precedent to rule in his favor.

The panel also misinterprets <u>Johnson v. Texas</u>. As I explained earlier, the holdings in <u>Johnson</u> were simply that (1) when a defendant's challenge to a Texas special issues instruction raises the question of whether there was an Eighth Amendment violation because the capital sentencer was precluded from fully considering and giving full effect to the defendant's relevant mitigating evidence, the reviewing court must apply the <u>Boyde</u> reasonable likelihood test to determine whether such a violation occurred; and (2) under the particular evidence and circumstances in <u>Johnson</u>, according to the extensive factual analysis by the majority, there was no reasonable likelihood that the special issues instruction precluded the capital sentencer from fully considering and fully giving effect to the mitigation evidence, because in that particular case the mental and analytical processes of the capital sentencer in answering the special issue of future dangerous question were substantially similar to that of a reasonable capital sentencer using the evidence for purposes of assessing the

defendant's culpability and selecting the appropriate sentence on the basis of that assessment. <u>Johnson</u>'s passages distinguishing Penry's mental retardation evidence from Johnson's evidence of his youth, and contrasting how they would affect the jurors' answer to the dangerousness special issue did not constitute a holding that in any way limited the requirement that the capital sentencer be enabled and allowed to give full consideration and full effect to all of a defendant's relevant mitigating evidence. If it had been the intention of the Court to create a double edged evidence rule restricting the principles articulated by <u>Penry</u> to cases involving purely aggravating evidence, there would have been no need in that case for the Court to adopt and apply the <u>Boyde</u> reasonable likelihood test; under a double edged evidence theory the Court could have simply determined that evidence of youth is not purely aggravating evidence and therefore, following that theory, <u>Penry I</u> would not apply to require an additional instruction in order to avoid a constitutional violation. The Court's decision in <u>Johnson</u> does not anywhere say that it is adopting any rule except the rule that when a <u>Penry I</u> violation challenge is brought, the reviewing court must apply the <u>Boyde</u> test to ascertain if there has been a violation. Furthermore, the attempt to read an implied double edged evidence limitation upon <u>Penry I</u> into the <u>Johnson</u> opinion leads to many inexplicable inconsistencies. Since the principles articulated in <u>Penry</u> have general application to all capital

23

sentencers in all death penalty jurisdictions, one would expect that, if there were such a limitation, it would be reflected or discussed by the Supreme Court decisions subsequent to Johnson – but to my knowledge there has been none. At least, one would expect Justice Kennedy, Johnson's author, to refer to it in other opinions, but instead he silently and fully joined in all subsequent opinions by Justice O'Connor in which she forcefully reaffirmed the view of Lockett, Eddings and Penry I that the principles set forth therein apply to any relevant evidence or factor that might tend to have a mitigative effect upon the capital sentencer's decision of whether to decline to impose the death penalty, e.g. Penry II and Tennard.

Consequently, when correctly applied, the clearly established principles of federal law as determined by the Supreme Court in Lockett, Eddings, Penry I, McKoy, Boyde, Payne, McClesky, and Buchanan, require the conclusion that Cole's evidence of neurological defect, lack of impulse control, and destructive family background is relevant mitigating evidence that Texas must enable and allow its capital sentencer to give full consideration and full effect in the assessment of his culpability and the selection of his sentence; and because there is a question whether the capital sentencer in Cole's case was enabled and allowed to do so, we must apply the Boyde test and conclude that there is more than a reasonable likelihood that the capital sentencer in his case

24

was not able to fully consider the evidence for the purpose of assessing his culpability or to give full effect to the evidence by choosing the appropriate sentence for Cole and his crime on the basis of that assessment and all of the evidence and circumstances of the case.

For these reasons I respectfully dissent from the majority's decision to deny an en banc hearing in this case.